**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | 4:25-CR-00155-SRC |
| ) | |
| TONIA HADDIX, ) | |
| ) | |
|     Defendant. ) | |

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**

Defendant Tonia Haddix ("Haddix"), by and through undersigned counsel, respectfully submits this memorandum to assist this Court in fashioning a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Specifically, consistent with the factors set out in the PSR, Haddix respectfully moves this Court for a downward variance and requests a sentence of one year and one day.

This is not the first instance where television does not fully reflect reality. Indeed, the 55-year-old wife and mother of two adult children who stands before this Court for sentencing endured a difficult childhood replete with neglect, instability, and physical abuse; was the victim of domestic abuse by at least two of her spouses; has no prior criminal history; and has a stable employment history including in healthcare as a nurse. It was, in fact, this former nurse's love for animals that drew her life in another direction—and to state that she cares for, and protects, her animals as if they were her own children would be an understatement.

To be clear, Haddix understands she faces sentencing for serious crimes including perjury and obstruction of justice, all of which arise out of lies she told the court in a misguided effort to retain possession of Tonka, a chimpanzee she loved and adored. She accepted responsibility for this criminal conduct by pleading guilty to an information in lieu of an indictment. Without

attempting to excuse the behavior for which she is being sentenced, it is important to highlight that Haddix's relationship with her animals is what drove the underlying behavior, not animosity for the law or this Court.

As set out below, Haddix seeks a sentence below the Disclosure PSR's advisory Guidelines range of 51-63 months and both parties have filed objections to certain enhancements the Probation Office has included. But setting aside the advisory Guidelines, there is a more fundamental question under Title 18, United States Code, Section 3553(a) that strikes at the heart of this particular case: how much prison time is "sufficient, but not greater than necessary" to underscore that witnesses and litigants must tell the truth under oath and otherwise be honest with courts in case where the motive was neither financial nor about harming any member of society but was about keeping a beloved animal? The truth is, for most people, an appropriate sentence under these circumstances would not require any jail time—and that is particularly true for a defendant like Haddix who has never been sentenced to a term of incarceration. But even if this Court sees Haddix differently and wants to send a message through this case, the bottom line remains: a sentence of 1 year and 1 day accomplishes that objective.

As is made clear by the letters submitted on behalf of Haddix for the Court's consideration in this sentencing, Haddix's sole drive in life was caring for the animals, with one letter stating that "[h]er love for animals isn't casual, it's her life." Her friend, Cassandra MacDonald, wrote that Haddix was motivated by "love, loyalty, and what she felt was her moral obligation to protect an animal she considered part of her family." Haddix's friend, Mary Vesci, writes that she has witnessed "firsthand her dedication and tireless effort to provide a safe and enriching environment for the animals in her care." While the crimes to which Haddix has pled guilty are serious, it is important to note that they are not violent, related to drugs, or driven by financial greed. Haddix's

2

criminal conduct is inexcusable but is inextricably intertwined with her relationship with her animals and their care.

As Congress and the Supreme Court acknowledge, this Court is charged with the responsibility of evaluating Haddix as an individual in crafting an appropriate sentence that is particularly tailored to her. *See Koon v. United States*, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"); *see also* 18 U.S.C. § 3553(a)(1) ("The court…shall consider…the history and characteristics of the defendant").

## I.      Procedural Background

On March 31, 2025, Haddix waived indictment and pled guilty to two counts of perjury in violation of 18 U.S.C. § 1623(a) and one count of obstruction of justice in violation of 18 U.S.C. §§ 1503(a) and (b)(3). (Doc. 4). On June 11, 2025, the United States Probation Office prepared a disclosure Presentence Investigation Report ("PSR"). (Doc. 19). On June 27, 2025, Haddix timely filed objections to the PSR. (Doc. 28). The Government filed a Response to those objections on July 1, 2025. (Doc. 31). Sentencing is currently set for August 7, 2025. (Doc. 23).

## II.     Legal Standard

As this Court is aware, Congress has mandated that the sentence imposed in this case be "sufficient, but not greater than necessary" to achieve the objectives of sentencing as set forth in the statute. 18 U.S.C. § 3553(a). The United States Sentencing Guidelines, while advisory, "are no longer mandatory." *United States v. Ture*, 450 F.3d 352, 356 (8th Cir. 2006); *see also United States v. Booker*, 543 U.S. 220, 224 (2005).

As the United States Court of Appeals for the Eighth Circuit has established, the methodology this Court should follow post-*Booker* is the following:

> In sentencing a defendant, a district court must first determine the advisory sentencing range as recommended by the Guidelines . . .. Next, the district court should decide if any applicable Guidelines provisions permit a traditional "departure" from the recommended sentencing range . . .. The term "departure" is "a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines" . . .. The calculation of the initial advisory Guidelines range, along with any applicable departures, results in a "final advisory Guidelines sentencing range" . . .. Finally, in determining the actual sentence that should be imposed, a district court must consider whether the factors in 18 U.S.C. § 3553(a) justify a "variance" outside the final advisory Guidelines sentencing range . . .. As opposed to a "departure," a "variance" refers to a "non-Guidelines sentence" based on the factors enumerated in Section 3553(a).

*United States v. Lozoya,* 623 F.3d 624, 625-26 (8th Cir. 2010) (citations omitted).

### III.    Objections to the Presentence Investigation Report

Haddix filed several objections to the findings of the PSR on June 27, 2025, (Doc. 28), and addresses the status of each below. The Government responded to these objections and concurred with several. No final PSR has been released, so the position of the Probation Office is unknown at this time and the final Guidelines computations by the Probation Office is similarly unknown at this time.

Haddix objected to the inclusion of Paragraphs 16, 17, and 18. The Government responded that it argues that the paragraphs are appropriately included for the Court's consideration. Haddix maintains her objection as originally filed and would seek the striking of Paragraphs 16, 17, and 18 from the PSR as irrelevant to the sentencing in this case.

Haddix objected to the inclusion of J.S.G., Esq., and by extension PETA, as a victim in this case in Paragraph 32. The Government argues that this designation is appropriate. Haddix maintains her objection based on the factual basis for her guilty plea and its focus on the administration of justice as the victim in this matter.

4

Haddix preemptively objected to the possible application of a sentencing enhancement under U.S.S.G. Section 3C1.1 based on the contents of Paragraph 33. The Government responded and, while concurring with the PSR's framing of Paragraph 33, concurred with Haddix that any enhancement under U.S.S.G Section 3C1.1 would not be applicable. Haddix therefore, in concurrence with the Government, maintains her objection to any potential enhancement under Section 3C1.1 based on the contents of Paragraph 33.

Haddix objected to the Specific Offense Characteristic under Section 2J1.2(b)(1)(B) applied in Paragraph 38. The Government responded that it concurs with Haddix's objection that the Specific Offense Characteristic should not be applied. Haddix maintains this objection and incorporates the legal arguments made in her timely-filed objections. (Doc. 28).

Haddix objected to the Specific Offense Characteristic under Section 2J1.2(b)(2) applied in Paragraph 39. The Government responded, arguing the application of this characteristic was appropriate. Haddix maintains her objection and incorporates the legal arguments made in her objections. (Doc. 28).

Haddix objected to the Specific Offense Characteristic under Section 2J1.2(b)(3)(C) applied in Paragraph 40. The Government responded that it concurs with Haddix's objection that the Specific Offense Characteristic should not be applied. Haddix maintains this objection and incorporates the legal arguments made in her objections. (Doc. 28).

Haddix objected to the omission of her eligibility for the Zero-Point Offender reduction in Paragraph 46. In its response, the Government merely notes that if the Court applies the characteristic in Paragraph 38—which both parties object to—Haddix would no longer be eligible for the Zero-Point Offender two-point reduction. Haddix maintains her objection.

Haddix objected to the Total Offense Level of 24 in Paragraph 47. She argues that the Total

Offense Level should be 10, if all of her objections are sustained.

Haddix objected to the advisory Guidelines sentencing range of 51-63 months contained in Paragraph 91 of the PSR. Based on a Total Offense Level of 10 and an undisputed Criminal History Category of I, the appropriate sentencing range should be 6-12 months. The Government, in the Plea Agreement and its Sentencing Memorandum, asserts that the sentencing range should be 10-16 months.

Haddix is requesting a sentence of one year and one day consistent with Section 3553(a) regardless of whether that sentence falls within or outside the advisory Guidelines range based on the Court's ultimate determination. In that respect, Haddix concurs with the Probation Office that factors exist for a downward variance in this case. (Doc. 19 at ¶ 112).

**IV.     A Downward Variance is Warranted**

As a matter of law, this Court must not presume the Guideline range reasonable, but must make an individual assessment of the 18 U.S.C. § 3553(a) factors based on all the facts presented. *Gall v. United States*, 552 U.S. 38, 50 (2007). Based upon a consideration of the statutory sentencing factors set out in 18 U.S.C. § 3553(a), a downward variance is warranted in this case.

Section 3553(a) sets forth a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Section 3553(a) then lists numerous factors that a sentencing court must consider. Especially relevant to this case, and supportive of this motion for a downward variance, are the following factors:

A.     <u>The History and Characteristics of the Defendant – 18 U.S.C. § 3553(a)(1)</u>

Haddix's parents divorced when she was only two years old. That began a lifetime of tumultuous family relationships. Through her childhood, Haddix was raised primarily by her undiagnosed bipolar mother who both emotionally and physically abused her. In addition to the

6

physical abuse, Haddix's childhood was permeated with instability in her home, including financial struggles and educational neglect.

At the age of 19, Haddix began her unsuccessful journey to create a stable home life for herself. At 19, she married a 42-year-old man with that marriage ending in divorce six years later. In that marriage, Haddix gave birth to her son, and fostered and adopted her daughter.

Still seeking stability through relationships, Haddix married her next husband only six months after her divorce. Haddix married a 55-year-old man in March 1996, divorced him in October 1996, and then remarried him in January 1999. To add trauma to Haddix's already tumultuous life, her husband died in 2001 from cancer.

Haddix once again married in 2002. As a 32-year-old woman, Haddix married a 55-year-old man while still grieving the loss of her second husband. That marriage ended three years later in divorce because Haddix was still emotionally dealing with the death of her prior husband.

Less than four months after her divorce, Haddix married once again in December 2005. This marriage to a 53-year-old man also ended in divorce.

Haddix then moved on to her most tumultuous adult relationship when she married Gary Haddix in 2009. In this marriage, Haddix was physically abused by a drug addict against whom she sought an order of protection. Haddix finally escaped this relationship in November 2016, over five years after first seeking the order of protection.

It was at this point in her life that her love of animals became her vehicle for finding contentment and fulfilling relationships. As one letter of support states: "Tonia has spent years rescuing and caring for primates, many of them elderly, disabled, or discarded by others. . . . She has helped others who couldn't afford medical care for their monkeys, never asking for anything in return." Another letter makes clear her connection to these animals, stating: "I watched as she

7

communicated with them, and they communicated back. It appeared clear to me . . . that these were mutual emotional relationships. They cared for her as she cared for them. They trusted her, and she trusted them."

Haddix is currently married to Jerry Aswegan and has been since 2021. She has reported some struggles in this relationship, but she and her husband remain dedicated to each other, even in the face of the consequences of her actions. She has two adult children, one biological son and one adopted daughter.

In the face of this adversity, it is important to note that Haddix has no criminal history and has made a life providing for herself and caring for others. As pointed out in the PSR, Haddix's history and characteristics, including her troubled childhood and history of traumatic adult relationships, are factors that warrant a downward variance to result in a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

Ultimately, the true history of Haddix is one of insecure attachments in her family as a child and in her marriages as an adult. Over the course of decades, her home life was marked by emotional and physical abuse, neglect, power imbalances, and illness. This life taught her a clear lesson: humans are unpredictable and are not frequently safe or trustworthy. In the face of these harsh realities threaded throughout her life, Haddix came to form secure attachments with animals.

In more traditional settings often in the context of dogs, cats, small mammals, and fish, our society has long recognized that relationships between humans and animals are real, meaningful, and even have therapeutic benefits—as evidenced by the existence of emotional support animals and everyday relationships between people and their beloved pets. These kinds of relationships contribute to creating a sense of companionship, a reduction in loneliness, and they often lessen the ways in which people experience symptoms of anxiety, depression, and even more substantial

mental health struggles. What is unique about this case is that Haddix developed relationships with chimpanzees. That is admittedly unusual in the United States. But through a different lens, that is perhaps unremarkable: chimpanzees are profoundly similar to humans, both physically and behaviorally—sharing 98.8 percent of DNA and making them what the American Museum of Natural History describes as "humans' closest living relatives."

This does not excuse Haddix's criminal conduct, but when it comes to federal sentencing, it is only fair for this Court to consider the crimes for which Haddix is being sentenced within the context in which they occurred. And in this case, that requires meaningfully understanding the person who stands before this Court for sentencing.

> B. The Nature and Circumstances of the Offense and The Need to Protect the Public from Further Crimes of the Defendant – 18 U.S.C. §§ 3553(a)(1); (a)(2)(C)

While it is easy to get lost in the long and web-like story that undergirds why Haddix is before this Court, the nature and circumstances of this offense are important to keep in context.

Haddix is not before this Court for anything related to harm coming to any of the animals in her care. However, if she were facing sentencing for federal animal related crimes, she would be facing a statutory maximum of one year in prison, as opposed to the 20-year statutory maximum she currently faces. *See* 7 U.S.C. § 2149. Indeed, one federal law prohibiting the slaughter of certain animals for human consumption carries only a financial penalty and no possibility of prison time. 7 U.S.C. § 2160. But Haddix did not harm the animals in her care, and that should not be lost on this Court.

Haddix is not before this Court for threatening PETA or their attorneys. However, if she were facing sentencing for a federal crime involving a threat, she would only be facing a statutory maximum of five years and a base Guidelines range of 10-16 months. *See* 18 U.S.C. § 875(c);

9

U.S.S.G. Section 2A6.1. But Haddix is not before this Court for any such conduct.

Haddix committed serious crimes and is ready to face sentencing and the undesirable consequences that inevitably flow from this Court's sentence, but the nature and circumstances of the actual counts of conviction demonstrate that the Guidelines calculations set out in the PSR of 51-63 months are significantly elevated over a reasonable sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a).

    C. <u>The Need to Avoid Unwarranted Sentence Disparities – 18 U.S.C. § 3553(a)(6)</u>

A sentence including a downward variance from the Guidelines calculations in this case would satisfy Congress' mandate that sentencing courts should aspire to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(7).

A downward variance in this case is appropriate on the merits—but is also not inconsistent with how similarly-situated defendants are sentenced throughout the country. In 2024, for example, based on data published by the United States Sentencing Commission, almost 40% of defendants received a downward variance resulting in a below-Guidelines sentence.[1] More specifically to this judicial district, over 44% of defendants received a variance.[2] For the group of offenses labeled as "Other Miscellaneous Offenses," which include administration of justice offenses, over 35% of defendants received a downward variance.[3] And in this judicial district, over 45% of defendants in this category received a downward variance.[4]

---

[1] *See* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2024/moe24.pdf (last accessed July 23, 2025).
[2] *See Id.*
[3] *See Id.*
[4] *See Id.*

## V. Collateral Consequences

Haddix faces sentencing for the only criminal convictions of her life. When faced with the possibility of additional incarceration, it is easy to lose sight of the fact that a sentence of one year and one day in federal prison is, by no means, lenient. Indeed, as recently as 2007, the U.S. Supreme Court rejected the idea that even a sentence of probation is nothing but an overly lenient slap on the wrist. *See Gall v. United States*, 552 U.S. 38, 44 and n.4 (2007) ("Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty...[p]robation is not granted out of a spirit of leniency...probation is not merely 'letting an offender off easily'").

For Haddix, the shame and humiliation this criminal case has brought to her have been profoundly difficult. Indeed, Congress directed, more than three decades ago, that the Guidelines should reflect the "general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j). Haddix is a first time offender, the crimes for which Haddix is being sentenced are not crimes of violence, and while there is no justification in lying under oath to a court or providing false information to a court, this Court should find that what Haddix pled guilty to falls within this category set out by Congress.

With respect to collateral consequences, Haddix brings one important case to the Court's attention: *United States v. Nesbeth*, 188 F.Supp. 3d 179, 2016 WL 3022073 (E.D.N.Y. 2016), *appeal withdrawn* (Sept. 9, 2016). In *Nesbeth*, the defendant was convicted by a jury "of importation of cocaine and possession of cocaine with intent to distribute. Her advisory guidelines sentencing range was 33-41 months." *Id*. at *1. In thoughtfully rendering a sentence of one year of probation, Judge Block explained:

11

>  Nonetheless, I rendered a non-incarceratory sentence today in part because of a number of statutory and regulatory collateral consequences she will face as a convicted felon. I have incorporated those consequences in the balancing of the 18 U.S.C. § 3553(a) factors in imposing a one-year probationary sentence.
>
>  I am writing this opinion because from my research and experience over two decades as a district judge, sufficient attention has not been paid at sentencing by me and lawyers—both prosecutors and defense counsel—as well as by the Probation Department in rendering its pre-sentence reports, to the collateral consequences facing a convicted defendant. And I believe that judges should consider such consequences in rendering a lawful sentence.
>
>  There is a broad range of collateral consequences that serve no useful function other than to further punish criminal defendants after they have completed their court-imposed sentences. Many—under both federal and state law—attach automatically upon a defendant's conviction.
>
>  The effects of these collateral consequences can be devastating. As Professor Michelle Alexander has explained, "[m]yriad laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of 'civi[l] death' and send the unequivocal message that 'they' are no longer part of 'us.'"

*Id*. (internal footnotes omitted).

In this case, the collateral consequences of Haddix being a convicted felon will have immediate and long-lasting effects. This Court can, and should, take these long-lasting collateral consequences into account when fashioning a sentence sufficient, but no greater than necessary.

## VI.  Conclusion

Against the backdrop of what has transpired and the fact that this case is in the public spotlight because is factually unusual, there can be a temptation to sentence Haddix to a lengthy prison term. But context matters and, as the age-old adage goes, "justice must be tempered with mercy."

Haddix accepts that she is before this Court for sentencing for serious crimes and that this Court must impose a penalty. That is justice. But Haddix also appeals to this Court's discretion to

temper that justice with mercy. This will be the first term of incarceration this 55 year old woman ever faces and, as set out in detail in the PSR, there are significant mitigating factors warranting a more lenient sentence.

One of the toughest realities to accept at any age is that, as people, we cannot go back in time to make better decisions. We have to accept the decisions we make and the consequences of those decisions. A sentence of one year and one day is not a slap on the wrist; it is, instead, the appropriate sentence in this case taking into account all relevant considerations.

For all the reasons set forth in this memorandum, Haddix appeals to this Court's discretion to impose a sentence of 1 year and 1 day, which is "sufficient, but not greater than necessary," and that is what the law requires. 18 U.S.C. § 3553(a).

Respectfully submitted,

**Margulis Gelfand, LLC**

*/s/ Justin K. Gelfand*
JUSTIN K. GELFAND, # 62265
7700 Bonhomme Avenue, Suite 700
St. Louis, MO 63105
Telephone: (314) 390-0234
Facsimile: (314) 485-2264
justin@margulisgelfand.com
***Attorney for Haddix***

**<u>Certificate of Service</u>**

I hereby certify that the foregoing was filed electronically with the Clerk of the Court, and that all parties will receive notice of this filing through this Court's electronic filing system.

> */s/ Justin K. Gelfand*
> JUSTIN K. GELFAND, # 62265
> 7700 Bonhomme Avenue, Suite 700
> St. Louis, MO 63105
> Telephone: (314) 390-0234
> Facsimile: (314) 485-2264
> justin@margulisgelfand.com
> ***Attorney for Haddix***